**KENNETH ROSELLINI (6047)**
**ATTORNEY AT LAW**
636A Van Houten Avenue
Clifton, New Jersey 07013
 (973) 998-8375 Fax (973) 998-8376
*Attorney for Plaintiff, Victor Mondelli*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| VICTOR MONDELLI,<br><br>    Plaintiff,<br><br>            v.<br><br>BERKELEY HEIGHTS NURSING & REHABILITATION CENTER, MARINA FERRER, DIANE WILVERDING AND JOHN/JANE DOES 1 through 5,<br><br>    Defendants. | CIVIL ACTION<br><br>Case No. :<br><br>JURY TRIAL DEMANDED<br><br>**COMPLAINT and**<br>**JURY DEMAND** |
|---|---|

Plaintiff Victor Mondelli in the above-captioned matter, by and through his counsel of record, for his cause of action against Defendants, states as follows:

**PARTIES**

1.      Plaintiff, Victor Mondelli ("Mondelli") is currently a resident of the State of New Jersey, whom was residing in Union County, New Jersey at times relevant to this Complaint.

2.      The Defendant, Berkeley Heights Nursing & Rehabilitation Center ("BHNRC") is, upon information and belief, a New Jersey licensed Heath Facility/Nursing Home.

3.      Defendant Marina Ferrer is upon information and belief a New Jersey resident and the Administrator of BHNRC.

4.      Defendant, Diane Wilverding, is upon information and belief a New Jersey resident and Director of Recreation for BHNRC.

5. Mary Chmura is upon information and belief a New Jersey resident and a former employee of BHNRC.

6. Leanne Fiet is upon information and belief a New Jersey resident and employed by BHNRC as a consultant and or compliance advisor/supervisor.

7. Pamela McCarthy is upon information and belief a New Jersey resident and employed by BHNRC as a long term care nurse.

8. Virginia Doe is upon information and belief a New Jersey resident and employed by BHNRC as a supervising nurse.

9. John/Jane Does 1 through 5 are persons who were responsible for the care and visitation of Anna Mondelli while she resided at BHNRC.

## JURISDICTION AND VENUE

10. The jurisdiction of this Court is invoked by Plaintiff pursuant to 28 *U.S.C.* §1331 which confer original jurisdiction upon the Court on the grounds that the instant action arises under the Title II of the Americans with Disabilities Act (42 *U.S.C.* §§12131-12165) and Supplemental Jurisdiction under 28 *U.S.C.* §1337.

11. Venue in the New Jersey District is properly laid pursuant to 28 U.S.C. §1391, in so far as the following alleged unlawful conduct complained of in this Complaint, which forms the factual and legal basis of the claims of the Plaintiff, arose within the geographical limits of this District.

## FACTUAL BACKGROUND

12. Plaintiff, Victor Mondelli, is currently a resident of New Jersey, whom was residing in Union County, New Jersey at times relevant to this Complaint.

13. Anna Mondelli, the Plaintiff's biological mother, was a resident of Berkeley Heights Nursing & Rehabilitation Center from January of 2012 through March of 2015.

14. Anna Mondelli passed away in May of 2015.

15. Plaintiff has a mental health disability for which he receives SSI benefits.

16. Plaintiff had a strong emotional bond and attachment with his mother, which they had maintained daily for his entire life.

17. In fact, until July 25, 2013, Plaintiff had continuously visited with his mother Anna Mondelli twelve hours per day at the Berkeley Heights Nursing & Rehabilitation Center.

18. During the visits, Plaintiff observed the Defendants providing improper care to Anna Mondelli.

19. Plaintiff observations of the improper care that Anna Mondelli received at BHNRC resulted in him filling numerous complaints with the New Jersey Board of Health and the Office of the Ombudsman for the Institutionalized Elderly ("Ombudsman").

20. For example, the Ombudsman also helped reverse a "do not resuscitate" directive that appeared on Plaintiff's mother's medical file without her authorization or anyone else's with a power of attorney. This was reversed after the complaints-and there still no answer as to why it was placed in there, but it was pulled from her file.

21. On July 25, 2013, Plaintiff observed that a temporary feeding tube (in fact a Foley Catheter) that was used to feed his mother, Anna Mondelli, was not properly connected and was out.

22. Plaintiff observed this right after the nurse's aide had changed her clothes for her

23. Anna Mondelli was complaining of bad stomach pains at the time.

24. The feeding tube was in fact a temporary feeding tube, which was the third Foley

Catheter used as a feeding tube over the previous two months.

25. In fact, BHNRC was aware of its responsibility to get Anna Mondelli the correct type of feeding tube, which it failed to do.

26. The Ombudsman substantiated the fact that the Foley Catheter was being improperly utilized as a permanent, rather than a temporary tube.

27. Upon information and belief, the improper use of the Foley Catheter caused damage to Anna Mondelli's health, including serious internal bleeding ulcers.

28. In the fall of 2012, Anna Mondelli and Plaintiff demanded that the doctor put the original feeding tube in at Overlook Hospital.

29. BHNRC continuously misrepresented to the State of New Jersey and the Superior Court of New Jersey, the amount and quality of care it provided to Anna Mondelli.

30. In fact, BHNRC was providing but minimal care to Anna Mondelli through nurses aids.

31. In retaliation for the Plaintiff's complaints about BHNRC's care of Anna Mondelli, BHNRC demanded that he sign a "Service Agreement" on July 26, 2013 to restrict him from helping his mother Anna Mondelli in ways that BHNRC failed to do for the previous sixteen months.

32. For example, in September of 2012, the Assistant Director of Nursing advised Plaintiff that, because of Anna Mondelli's age, she wouldn't be able to get out of bed anymore.

33. By January of 2013, BHNRC completely stopped assisting Anna Mondelli with exercising her to keep her healthy.

34. Because of this, Plaintiff was the only person assisting her sot that she maintained movement to stay strong and healthy.

35. On July 26, 2013, Plaintiff got Anna Mondelli up to exercise in the same way he had done for the sixteen months prior.

36. Plaintiff had many other concerns about BHNRC's failure to care for Anna Mondelli.

37. For example, Anna Mondelli had a bad rash on the inside of her legs as red as a tomato from BHNRC neglect in failing to wash her and treat her with the appropriate creams.

38. There were many other incidents.

39. For example, on July 27, 2013, Plaintiff arrived at Anna Mondelli's room at 8:00 A.M. to find her air mattress was unplugged and flat—and she had no oxygen on her.

40. In July 28, 2013, Plaintiff arrived at 8:00 A.M. to find his mother shivering cold because BHNRC had not properly dried her after washing her.

41. This occurred again on July 29, 2013, and the treating nurse acknowledged the problem both times.

42. On July 30, 2013, BHNRC had failed to properly adjust the oxygen and it was attached in a way that was choking Anna Mondelli.

43. Plaintiff advised the treating nurse, and the oxygen was adjusted to give Anna Mondelli relief.

44. On July 31, 2015, the air mattress was flat again, and Anna Mondelli was complaining of chest pains.

45. All of the above demonstrates that Anna Mondelli was not receiving proper care at the BHNRC in July of 2013, and Plaintiff's complaints were substantiated.

46. In fact, Leanne Fiet, a supervisor of BHNRC, acknowledged in an Email that Plaintiff complained about BHNRC on a daily basis.

47. In fact, Defendants were more concerned with the fact that Plaintiff was making complaints than addressing those complaints.

48. Several of Plaintiff's complaints to the State Ombudsman regarding Anna Mondelli's care resulted in action, as stated *supra*. and *infra*.

49. For example, as a result of the Plaintiff's complaints the Ombudsman stopped BHNRC from discharging her home in April of 2013 before she or Plaintiff was ready to move her back there.

50. For example, as a result of the Plaintiff's complaints, the Ombudsman stopped BHNRC's use of Canned Protein, because feeding her this was making her sick.

51. For example, as a result of the Plaintiff's complaints, the Ombudsman stopped Berkeley Heights Nursing & Rehabilitation Center from transferring Anna Mondelli to a facility in Cape May, New Jersey where it would have been impossible for Plaintiff to visit her.

52. For example, as a result of the Plaintiff's complaints, the Ombudsman also stopped Berkeley Heights Nursing & Rehabilitation Center from leaving her in parts of her room where the sun was too hot and from which she would get too hot and bake.

53. By July of 2013, Plaintiff had been giving Anna Mondelli Ensure by way of the feeding tube on a daily basis because BHNRC was not providing her with the proper nutrition.

54. Anna Mondelli's nutritionist was fully aware that Plaintiff was feeding Anna Mondelli the Ensure so that she would have proper nutrition.

55. In fact, BHNRC had taught Plaintiff this method of feeding Anna Mondelli when it wanted to release Anna Mondelli to Plaintiff's care in April of 2013.

56. A BHNRC Nurse for the facility's Wing A, whose first name is Virginia (and whose last name is unknown at this time to the Plaintiff) stored the Ensure bottles that Victor

Mondelli provided to BHNRC in her office.

57. Pamela McCarthy acted as Anna Mondelli's longer term care nurse, and fed Anna Mondelli the Ensure.

58. Pamela McCarthy also knew that Victor Mondelli was providing the Ensure and feeding it to Anna Mondelli

59. These Ensure bottles were fed to Anna Mondelli through a feeding tube (or the Foley Catheter when improperly utilizing that device as a feeding tube) by either BHNRC staff or Victor Mondelli himself, with the full knowledge of the Defendants.

60. On July 31, 2013, 2:10 P.M., Plaintiff was advised by BHNRC to leave the room where he was visiting his mother, with two nurse's aides and one nurse coming in to examine Anna Mondelli, the same nurse that Plaintiff had been complaining to in the mornings as to the bed being flat.

61. After about 10 minutes, Plaintiff was summoned to come back in the room.

62. When he went in the room, the nurse held up his mother's pants and sheet, and pointed to a bag where she purportedly found Ensure with a syringe—despite the fact no authorization had been given to search the bags.

63. Chmura came into the room and Plaintiff informed her that he was going to call the police due to BHNRC's improper conduct.

64. Chmura stated to Plaintiff that if he called the police, he would have to leave the facility.

65. Chmura communicated to the Plaintiff in a threatening and outrageous manner.

66. Plaintiff did call the police and later filed criminal charges against Defendant Chmura for which probable cause was found by the Scotch Plains Municipal Court, but Chmura

could not be located for service of the criminal summons and complaint.

67. In retaliation for the Plaintiff's concerns and complaints, in despite the Plaintiff's mental health condition, BHNRC and its Administrator, Defendant Marina Ferrer, restricted Plaintiff's visitation with Anna Mondelli to one or two hours a day for the rest of Anna Mondelli's life.

68. The restriction placed upon the visitation limited Plaintiff's visitation to one or two hours a day in BHNRC's Cafeteria.

69. By March 19, 2014, Plaintiff's visitation with Anna was further restricted upon the direction of Defendants Wilverding and Ferrer.

70. Wilverding directed that Plaintiff could no longer visit with his mother in the Cafeteria, claiming that their talking was interfering with other residents.

71. In fact, Plaintiff's mother was hard-of-hearing, so Plaintiff had to speak loud for her to hear him.

72. In fact, Plaintiff's talking with his mother had been the same as it had been for the previous seven months.

73. When Plaintiff left BHNRC, he filed a police report with the Berkeley Heights Police Department complaining that Wilverding was interfering with his rights of visitation with his mother and failing to provide proper accommodations.

74. A police officer went to BHNRC to investigate on March 19.

75. On March 20, 2014, Defendants' retaliation continued and Defendant Ferrer called the local police as soon as Plaintiff arrived at the facility to meet with mother in the cafeteria, accusing him of disorderly conduct, to intimidate Plaintiff to further restrict his visitation, and to prevent him from filing complaints against Defendants concerning their

wrongful conduct.

76. Defendants thereafter violated the Plaintiff's rights and failed to make proper accommodation for his disabilities so that he could visit with his mother, and caused him to meet with his mother solely in the lobby, which was not conducive to visitations and which was not properly heated.

## FIRST CLAIM FOR RELIEF
## (AMERICANS WITH DISABILITIES ACT)

77. Plaintiff incorporates by reference the allegations contained above, as though fully set forth here.

78. Defendants refused to provide Plaintiff with services to visit with his mother and used his disabilities as a means to deprive him of rights.

79. Defendants failed to take into account Plaintiff's disability when restricting his visitation with his mother.

80. Defendants failed to provide any service or accommodation for Plaitniff's disability so that Plaintiff could be with his mother in accordance with 42 C.F.R. 483.10.

81. By virtue of the foregoing acts, Defendants have violated Plaintiff's rights under Title II of the Americans with Disabilities Act (42 *U.S.C.* §§12131-12165), and as a result which Plaintiff has been damaged.

**WHEREFORE**, Plaintiff, Victor Mondelli, respectfully demands judgment against the Defendants, BERKELEY HEIGHTS NURSING & REHABILITATION CENTER, MARINA FERRER, DIANE WILVERDING, and JANE/JOHN DOES 1-5, jointly and severally, molded

by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

    A)    Damages in the amount of $10,000,000.00; and

    B)    Punitive Damages in the amount of $50,000,000.00; and

    C)    Awarding counsel fees to Plaintiff's legal counsel; and

    D)    Awarding Costs of Suit; and

    E)    Interest; and

    F)    Damages for Pain and Suffering; and

    G)    For such other relief as the Court may determine to be appropriate.

## SECOND CLAIM FOR RELIEF
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

82. Plaintiff incorporates by reference all prior facts and allegations in this Complaint here as if set forth at length herein.

83. The Defendants acted in conspiracy with one another and willfully and intentionally, and their actions were designed to cause plaintiff distress in retaliation for the meritorious complaints which Plaintiff filed against BHNRC.

84. As a result of this relentless barrage of harassment by the Defendants jointly, plaintiff suffered health problems and has suffered other pecuniary injuries.

**WHEREFORE**, Plaintiff, Victor Mondelli, respectfully demands judgment against the Defendants, BERKELEY HEIGHTS NURSING & REHABILITATION CENTER, MARINA FERRER, DIANE WILVERDING, AND JANE/JOHN DOES 1-5, jointly and severally, molded

by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal and state law and for:

  A)  Damages in the amount of $10,000,000.00; and

  B)  Punitive Damages in the amount of $50,000,000.00; and

  C)  Awarding counsel fees to Plaintiff's legal counsel; and

  D)  Awarding Costs of Suit; and

  E)  Interest; and

  F)  Damages for Pain and Suffering; and

  G)  For such other relief as the Court may determine to be appropriate.

## DAMAGE CLAIMS AS AGAINST ALL DEFENDANTS

## PUNITIVE DAMAGES

85. Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

86. In addition to compensatory damages, Plaintiff hereby make a claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants,

87. Defendants committed the acts and omissions alleged in this complaint and subjected Plaintiff to improper treatment that caused Plaintiff to suffer emotional distress so severe that no person should be expected to endure it.

88. Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated.

## ATTORNEY'S FEES

89. Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

90. As a result of Defendants' actions as alleged in this complaint, Plaintiff has been required to retain the service of attorneys and are entitled to a reasonable amount for attorney's fees.

## DAMAGES

91. Plaintiff incorporates by reference the allegations contained in paragraphs above, as though fully set forth here.

92. The acts and omissions of Defendants as set forth above have resulted in injury to Plaintiff.

93. By virtue of these injuries, Plaintiff is entitled to the following damages from all defendants:

   a) Mental and emotional pain and suffering; and

   b) Humiliation and sociological distress; and

   c) Compensatory Damages in the amount of $10,000,000.00; and

   d) Punitive damages in $50,000,000 or a reasonable amount that is sufficient to adequately punish all defendants and to deter future conduct of the type alleged in this complaint; and

   e) The costs of this action, attorney's fees, and such other and further relief as this Court deems just and proper.

## JURY DEMAND AND DESIGNATION OF PLACE OF TRIAL

Plaintiff demands that this matter be tried to a jury of twelve in the United States District Court for the District of New Jersey, Newark Vicinage.

/S/ Kenneth Rosellini

Dated: March 21, 2016

_____ _____
KENNETH ROSELLINI, ESQ. (6047)
Attorney at Law

## CERTIFICATION

I hereby certify that to the best of my information, knowledge and belief that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration is contemplated, and I am not aware of any other person whom should be joined in this matter.

/S/ Kenneth Rosellini

Dated: March 21, 2016

_____ _____
KENNETH ROSELLINI, ESQ. (6047)
Attorney at Law

## TRIAL COUNSEL DESIGNATION

Kenneth Rosellini, Esq. is hereby designated trial counsel in this matter.